## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 11 2018, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

I0N THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: Z.W. and Za.W. (Minor Children)

D.W. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services

*Appellee-Petitioner*

April 11, 2018

Court of Appeals Case No. 02A03-1711-JT-2680

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1701-JT-21
02D08-1701-JT-22

**Baker, Judge.**

[1] D.W. (Mother) appeals the trial court's order terminating her parent-child relationship with her two minor children. Mother argues that there is insufficient evidence supporting the termination. Finding the evidence sufficient, we affirm.

## Facts

[2] Mother has two children: Z.W., born in February 2008, and Za.W., born in January 2010.[1] In the past, Mother and the children lived in Texas. The children were removed from her care and custody from December 2011 through May 2012 because their father was incarcerated and Mother was placed in a mental hospital. At some point, Mother and the children moved to Indiana.

[3] On August 31, 2013, Mother and the children were on a bus when Mother had some sort of psychotic episode, throwing the children to the floor and "reciting religious rantings[.]" Tr. Vol. II p. 135. That day, Mother was hospitalized in a mental health facility and the Department of Child Services (DCS) removed the children from her care and custody. On September 4, 2013, DCS filed a petition alleging that the children were children in need of services (CHINS).

[4] On December 9, 2013, the trial court found the children to be CHINS after Mother admitted that she had been in a mental health facility and that she is prescribed medication for post-traumatic stress disorder (PTSD) and

---

[1] The children's father voluntarily relinquished his parental rights and is not part of this appeal. He has not seen the children since sometime in 2011.

schizophrenia but had not been taking the medication. On December 18, 2013, the trial court issued a dispositional decree, ordering that Mother complete a diagnostic assessment and a psychiatric evaluation, participate with home-based services and individual counseling, comply with all recommendations stemming from any of those services, take all prescribed medication, and participate with supervised visitation with the children.

[5] From September 2013 through November 2014, Mother received services including counseling, case work, supervised visitation, and random drug screens through Quality Counseling and Psychological Services (Quality Counseling). During that time, Mother's mental health was unstable, with periods of stability interspersed with periods of suspected psychosis. She refused to submit to drug screens much of the time, exhibiting agitation and yelling that she was being harassed. During her visits with the children, her periods of psychosis often appeared, at which time she would leave the visit and wander through the facility, leaving the visitation supervisor alone with the children. Her visitations were put on hold several times because of her inability to follow the rules. In April 2014, Mother completed a psychiatric assessment but "sabotaged the whole thing" with poor behavior, meaning that no conclusions were made. *Id.* at 95. She had three to four different counselors at Quality Counseling; on average, she requested a new service provider once every one to two months. Quality Counseling transferred Mother to another provider in November 2014 because her relationships with the Quality Counseling providers had gotten "really bad." *Id.* at 98. After over a year of

services at Quality Counseling, Mother had made no significant progress on her issues.

[6] After being transferred from Quality Counseling, Mother sought out counseling on her own, but failed to attend any appointments between May and October 24, 2016, or from January 13, 2017, through the time of the termination hearing in June 2017.

[7] In November 2014, Mother's visits were supervised by a new agency. Those visits went so well over time that in February 2016, Mother was allowed to have unsupervised visits with the children, including overnight visits. In May 2016, Mother and maternal aunt, with whom the children were placed, got into some sort of argument. Mother drove the children away from maternal aunt's home without permission; the aunt was concerned that Mother was intoxicated. After this incident, Mother's visits returned to being supervised. During the visits between June and November 2016, the supervisor noted that Mother often favored one child over the other and terminated one visit because he smelled alcohol on Mother. Mother was given a new visitation supervisor (at her request) in November 2016. At one February 2017 visit, the supervisor smelled alcohol on Mother and notified DCS. DCS requested that Mother submit to a drug screen but she refused. Mother stopped attending the visits after that incident; as of the termination hearing in June 2017, she had not visited with the children since February.

[8]     In April 2015, Mother completed a clinical interview; she was diagnosed with major depressive disorder, and it was recommended that she complete psychological testing. Consequently, in May 2015, she completed a psychological assessment; she was diagnosed with schizophrenia, major depressive disorder, and alcohol use disorder.

[9]     Mother also completed a substance abuse assessment, which recommended that she participate in substance abuse treatment. She participated with treatment, but because she continued to test positive for alcohol, it was recommended that she participate in a relapse prevention program. During the CHINS case, Mother tested positive for alcohol over forty-five times.

[10]    In February 2017, Mother essentially stopped participating in the case. She stopped attending visits, stopped providing random drug screens, stopped communicating with DCS, and failed to attend the final child and family team meeting.

[11]    On February 1, 2017, DCS filed a petition to terminate the parent-child relationship between Mother and the children. The termination hearing took place on June 13, June 28, July 10, and July 18, 2017. Mother failed to appear at all days of the hearing. On October 24, 2017, the trial court entered an order granting the termination petition. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[12] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[13] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II. Remedy of Reasons for Removal

[14] The bulk of Mother's argument is that the trial court erred by concluding that there is a reasonable probability that the conditions resulting in the children's continued removal from her care and custody will not be remedied.[2] The reason that the children were originally removed from Mother's care and custody was her unstable mental health; they continued to be removed because of both her mental health and concerns about her sobriety.

[15] Mother correctly points out that by and large, she participated with most court ordered services. The record reveals, however, that although she participated, she failed to benefit from those services. *See in re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005) (mere participation with services does not establish that conditions have been remedied if the services do not result in the needed change and the parent does not acknowledge a need for change). She did not benefit from the many services she received at Quality Counseling for over a year. She participated with substance abuse treatment but continued to test positive for

---

[2] This element of the statute and the element related to continuation of the parent-child relationship posing a threat to the children's well-being are phrased in the disjunctive, but the trial court did not make a finding with respect to the continuation of the parent-child relationship.

alcohol, refused to screen altogether at times, and insisted that she did not have an alcohol problem.[3]

Furthermore, in February 2017, Mother withdrew from the case altogether. In the five months leading up to the termination hearing, Mother stopped attending counseling, stopped submitting to drug screens, stopped visiting with the children, and failed to attend a child and family team meeting. She also failed to attend any of the four days of the termination hearing.

Given that Mother failed to benefit from the services she participated with and that she then stopped participating altogether, we find that the evidence supports the trial court's conclusion that there is a reasonable probability that the conditions resulting in the children's original and continued removal from Mother's care and custody will not be remedied.

## III. Best Interests/Satisfactory Plan

Mother's final argument is ostensibly related to whether the plan of adoption of the children by their maternal aunt is satisfactory. What she is actually arguing, however, is that termination is not in the children's best interests and that, rather than termination and adoption, a transfer of custody to the maternal aunt is the better way to proceed.

---

[3] Mother argues that the methodology employed by the drug testing company was faulty, but that argument goes to the weight to be given to that evidence, which is a determination to be made by the trial court that we will not second-guess.

[19] Mother had nearly four years to participate with services in the CHINS case so that she could provide a safe and stable home for her children. While she participated with services for years, however, she was never able to benefit from them. She progressed to unsupervised visits at one point, but those ended after she got into an argument with maternal aunt, who was concerned that Mother was intoxicated and drove the children from the aunt's home without permission. The children were never returned to Mother's care and, at the time of the termination hearing, she had not even seen them in five months. There is no reason to put off long-term stability for the children when the past four years have gotten Mother no closer to being ready to be a safe and appropriate parent. Under these circumstances, the trial court did not err by finding that termination is in the children's best interests.

[20] The children have been placed with their aunt the entire time they have been removed from Mother's care and custody (except for three days following the argument between Mother and aunt, when they were in foster care). They are doing well in that placement. Consequently, the trial court did not err by finding that DCS has a satisfactory plan for the care and treatment of the children.

[21] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.